☐ Original ☐ Duplicate



CLERK'S OFFICE
A TRUE COPY
Aug 26, 2024
/s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | Case No. 24-M-479 (SCD) |
| *or identify the person by name and address)* ) | Matter No. 2023R00176 |
| Information about the location of the cellular ) | |
| telephone assigned call number 414-745-1857, ) | |
| as further described in Attachment A ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____

*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    9-9-24 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Stephen C. Dries _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of _____ 12/24/2024 _____ .

Date and time issued:    8-26-24. 9:40 am _____

*Judge's signature*

City and state:    Milwaukee, WI _____    Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.      Records and information associated with the cellular device assigned call number 414-745-1857 ("Target Cell Phone") that is in the custody or control of T-Mobile (referred to herein and in Attachment B as the "Provider"), a wireless telephone service provider headquartered at 18410 West Bryn Mawr Avenue, Suite 700, Chicago, Illinois, 60631.

2.      The Target Cell Phone.

**ATTACHMENT B**

**Particular Things to be Seized**

## I.    Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

   a.   The following subscriber and historical information about the customers or subscribers associated with Target Cell Phone for the time period **July 23, 2024 to the date of this warrant**:

      i.   Names (including subscriber names, user names, and screen names);

      ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

      iii.   Local and long distance telephone connection records;

      iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

      v.   Length of service (including start date) and types of service utilized;

      vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

2

Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(i) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received); and

(iii) timing advance data (PCMD, RTT, True Call, Timing Advance, LOCDBOR, or equivalent).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phones will connect at the beginning and end of each communication.

c. Information about the location of Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data,

3

latitude-longitude data, per call measurement data (PCMD), Timing Advance, True Call, RTT, LOCDBOR, or similar and real time cell site information for 30 days and other precise location information.

    i.   To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phones on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

    ii.  This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitute evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846.

4



CLERK'S OFFICE
A TRUE COPY
Aug 26, 2024
s/ Marliah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No. 24-M-479 (SCD) |
| Information about the location of the cellular telephone assigned call number 414-745-1857, as further described in Attachment A | ) ) Matter No. 2023R00176 ) ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Possession with the intent to distribute controlled substances, and Conspiracy to possess with the intent to distribute controlled substances. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of  120  days *(give exact ending date if more than 30 days:*  12/24/2024  *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jacob Dettmerring, FBI SA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date:  8-26-24

_____
*Judge's signature*

City and state:  Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
_____
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I,  Jacob Dettmering, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 414-745-1857 (Target Cell Phone), whose service provider is T-Mobile, a wireless telephone service provider headquartered at Mawr Avenue, Suite 700, Chicago, Illinois, 60631.

2.      The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

3.      Because these warrant applications seek the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

4.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 7, 2018. I was assigned to the FBI Capital Area Gang Task Force (CAGTF) in Baton Rouge, Louisiana from June 15, 2018 to April 1, 2020. Since April 1,

2020, I have been assigned as the Task Force Coordinator for the Milwaukee Area Safe Streets Task Force (MASSTF). Since 2018, I have investigated violations of federal law, directed drug and street gang investigations, obtained and executed search and arrest warrants related to the distribution of illegal narcotics, and debriefed confidential informants and cooperating defendants. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal offenses.

5.      I have experience in the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses, and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

6.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and therefore does not set forth all of my knowledge about this matter.

7.      Based on the facts set forth in this affidavit, there is probable cause to believe that Jerald CAMPBELL (12/27/1996) is using the Target Cell Phone. I know from training and experience that cell phone users normally have their cell telephones with them, so locating a user's cell phone will show that user's location. I believe that locating the Target Cell Phone will constitute and lead to evidence of federal offenses, namely 21

2

U.S.C. §§ 846 & 841(a)(1), that have been committed by CAMPBELL and others, and are being committed by CAMPBELL and others.

8.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9.      On July 1, 2024, your affiant obtained a court order signed by the Honorable Pamela Pepper, Chief U.S. District Judge for the Eastern District of Wisconsin, authorizing the interception of wire communications to and from the cellular telephone assigned number 262-993-0926, which is used by Malik NICHOLS, and subscribed to Nicole Nichols. On August 1, 2024, the Honorable Pamela Pepper, Chief U.S. District Judge for the Eastern District of Wisconsin, entered an order authorizing the continued interception of wire communications to and from the cellular telephone assigned the telephone number 262-993-0926 (TARGET TELEPHONE 1), used by Malik Nichols, and the interception of wire communications to and from the cellular telephone assigned the telephone number 747-955-6842 (TARGET TELEPHONE 2), used by Dominique WILLIAMS.

10.     On July 12, 2024, at approximately 12:08 a.m., NICHOLS, using TARGET TELEPHONE 1 received an incoming call from TARGET TELEPHONE 2 used by Williams. WILLIAMS asked, "Can you give me a little tip?" NICHOLS responded, "I called him this morning, he said he was going to call me after uhhh after uhh he dropped

3

off his son or something. I was just about to call him." WILLIAMS then asked, "Why didn't he go get his ass tonight?" NICHOLS responded, "Yesterday he was at moms crib when I pulled up over there he was gone at the 'stu.' I was going to pull up at the 'stu' but it was dumping all last night." WILLIAMS responded, "Shit . . ." NICHOLS then stated, "I got a little bit of whats his name left. I'm tryna... uhhh.. I got a little bit of whats his name bro. . . . I just got a Ram. I just got a rental for the weekend. I got a truck so I could do the trailer. I could plug it up to catch the power. I am going to dump it and drop it off on Hampton." WILLIAMS responded, "uhhh . . . " and NICHOLS stated, "I am going to have the heads finish that shit up today." WILLIAMS then said, "Can you . . . ?" and NICHOLS responded, "I am going to call 'Pape [meaning Jerald CAMPBELL].'" Based upon my training, experience, and investigation to date, I believe that NICHOLS told WILLIAMS that he had some narcotics left (i.e., "some of whats his name left"), and that he was going to sell the remaining narcotics today (i.e., he was referring to having the "heads," meaning crackheads, finish that "shit up today" and was speaking with WILLIAMS regarding obtaining additional narcotics).

11. At approximately 3:10 p.m. on July 12, 2024, a Blue Rebel Ram bearing Fleet registration plate of 27421AFT entered the rear parking lot of the Atkinson stash house, and NICHOLS was observed exiting the driver's door of the Ram and entering the rear door to the Atkinson stash house. At approximately 3:12 p.m., NICHOLS exited the rear door to 1810 W. Atkinson Av. while appearing to be on Facetime on his cell phone. Shortly thereafter, CAMPBELL was observed exiting the rear entry door and observed shaking hands with NICHOLS. During this time, CAMPBELL was observed holding onto

4

a firearm under his left armpit. CAMPBELL then opened the rear driver side door to his Burgundy Dodge Ram. CAMPBELL then retrieved a carboard box from his truck bed. CAMPBELL then partially entered his front passenger door of his Ram and left the box in the passenger seat of his vehicle. CAMPBELL then walked back into the rear entry door to 1810 W. Atkinson Ave. A short while later, CAMPBELL was seen exiting the rear door again, with another carboard box, filled with suspected marijuana. CAMPBELL approached NICHOLS's Blue Dodge Ram and gave NICHOLS the box. CAMPBELL was seen returning to his vehicle with a black colored Hefty style garbage bag, which appeared to hold several pound sized bundles. CAMPBELL then took the bag and placed it in the bed of his truck. I believe that CAMPBELL split the marijuana in the box in half, gave one half to NICHOLS and kept one half for himself. At approximately 3:15pm, NICHOLS then walked towards a black Honda Accord bearing Wisconsin registration plate 730YUS, which parked in the north portion of the parking slab of 1810 W. Atkinson Avenue. A check in DOT revealed the vehicle listed to Jason E. PURSLEY (B/M 11/07/1989). A subject later identified as PURSLEY was then observed approaching NICHOLS from the driver's door of the Honda Accord. Case agents reviewed a DOT photo of PURSLEY and confirmed this subject to be PURSLEY. During this time, PURSLEY was observed wearing a purple t-shirt, black baseball cap, and light-colored shorts. Both PURSLEY and NICHOLS were observed having a conversation.

12. At approximately 3:16pm, CAMPBELL was observed exiting the rear entry door to 1810 W. Atkinson Avenue while holding the cardboard box and a black garbage bag. CAMPBELL was then observed approaching NICHOLS' Ram while holding the box.

5

Shortly after CAMPBELL was observed only holding the garbage bag, CAMPBELL placed the garbage bag into the bed of his Ram and then walked back into the rear entry door to 1810 W. Atkinson Avenue. Shortly after, CAMPBELL exited the rear entry door and entered back into the driver seat of his Ram. CAMPBELL then left the parking slab. At approximately 3:28pm, NICHOLS was observed leaving the parking slab and then traveling northbound on 18th Street, away from case agents' view. Shortly after, PURSLEY's Honda was observed exiting the parking slab.

13.     On July 30, 2024, while contemporaneously observing CAMPBELL via electronic surveillance, a case agent called 414-754-1857 (the Target Cell Phone) and observed CAMPBELL, via electronic surveillance, look at the two cell phones he was carrying in his hand, and then slide one of the iPhone open and answered the phone call. The case agent then engaged in an undercover conversation in which CAMPBELL confirmed that the number he was speaking on was 414-754-1857 (the Target Cell Phone), and this conversation was contemporaneously observed via electronic surveillance. Additionally, on July 29, 2024, at 5:11 p.m., TARGET TELEPHONE 1 called 414-745-1857 (the Target Cell Phone), used by Jerald CAMPBELL, and there was a twenty-seven (27) second non-pertinent discussion. Case agents believe that CAMPBELL was the user of 414-745-1857 (the Target Cell Phone) based upon their comparison of the voice of the user of 414-745-1857 (the Target Cell Phone), which was intercepted on July 29, 2024 and a recorded jail call made by CAMPBELL. The case agent's ruse call to CAMPBELL using 414-475-1857 (the Target Cell Phone) on July 30, 2024 confirmed that CAMPBELL is using 414-745-1857 (the Target Cell Phone).

6

14.    On August 2, 2024, at approximately 5:09 p.m., WILLIAMS, using TARGET TELEPHONE 2, made an outgoing call to Jerald CAMPBELL using (414) 745-1857.

15.    WILLIAMS asked, "lil cuz where you at?" CAMPBELL responded, "I'm at the trap," . . . "You need to get on this nigga's ass, beat ass... bro you know I don't giving no fucks... I don't really fuck with Malik on no tip like that but this some bitch ass shit bro and went an told what's her name about some shit about Malik... some shit Malik said in the trap about the nigga your baby mama uhhh, about your uhhh baby mama people. Uhh and I guess Malik be fucking on one of your baby mama people and they cool or some shit." WILLIAMS responded, but it was unintelligible. CAMPBELL stated, "Eli was saying some lil shit about you like aw yeah cuz always bragging, talking bout what he got, I don't want to kick it with no niggas who's finna get some paper otherwise he just kept coming off to you he wasn't even talking about you. You know I was just listening, you know usually I just get my shit off but I'm just trying to feel niggas out like... You know what I'm saying... like what's to you niggas bro.. like we got [UI], we woo, all this extra shit they keep saying and insinuating this shit. I just told niggas like bro what really to you niggas like are you even bringing cuz up like what's the word? Like a nigga, would knock one of them niggas' heads off right now bro, so it's kinda just irritating me one, and I just told bro like five are going... aw that's my cousin. I said that's cool but don't nothing leave out my trap though... like cuz being my big cousin getting it then what? Like you, I just like bro you starting shit like a lil bitch bro... like bro you going back to the next person now you done owed dude no... you don't kick it with dude, oh see that's my cousin... okay cool you call me broke, you in my shit." WILLIAMS

responded, " [UI] ain't his shit... he ain't helping you get money... he ain't doing [UI]." CAMPBELL stated, "I just told him that. I said y'all walk around this bitch robbing motherfuckers, they coming telling me y'all robbing and shit. You asking me to line niggas up on my line, this that and the third. Like bro niggas telling me to be careful with y'all, I don't even fuck with Eli. But a nigga think he gone rob me cuz, bro man I'd lose my shit around this bitch... I ain't gone lie."

16. WILLIAMS responded "Aye bro I ain't even been wanting to talk on the phone, I want this address. I ain't gone lie I been worried where the smoke is at I'm gone knock his head off his shoulders boy. Your cuz ain't never been laid down, face down bro, plenty trappers in my bitch." CAMPBELL stated, "I know," and WILLIAMS responded, overlapping each other, "Then you... bare face me fool like I was mugging him like well if they would've smoked me in that bitch nigga, they was gonna smoke me and Milli and [UI]. They would've smoked me in that bitch, man I would've hunted that man in his next life. " CAMPBELL stated, "I just told a nigga that on my baby nigga, I'm coming back for [UI] nigga I swear to god. Nigga I just said that. Nigga I'm coming back, nigga I'd be so motherfucking angry." WILLIAMS then asked, "You busy right now?" CAMPBELL responded, "No I'm uhhh... I was, I got somebody pulling up... I was trying to get that shit with Trey out the way... a nigga needs some... what you need me to do?" WILLIAMS stated, "Uh my migos needed a G, he just did some work so he needs a thousand dollars." CAMPBELL asked, "Where he at?" and WILLIAMS responded, "He's at the house on 26, but I'm finna send him over there." CAMPBELL said, "Send him over here, I'm outside waiting on him." WILLIAMS: responded, "Aight." Based upon their

8

training, experience, and the investigation to date, case agents believe that CAMPBELL stated he was at the Atkinson stash house, i.e., the "trap," and that CAMPBELL was explaining to WILLIAMS (who was in the Los Angeles, CA area at the time) that he had issues with NICHOLS' behavior including talking behind WILLIAMS' back and setting people up to be robbed using CAMPBELL's phone line. WILLIAMS stated that NICHOLS needed to be put in line and had never truly received a beating, "your cuz ain't never been laid down". CAMPBELL and WILLIAMS then discussed an event where WILLIAMS was robbed, "bare face," meaning, no mask, by someone. WILLIAMS stated that if the robber had killed him, the robber would have had to kill, "Milli," meaning Chamar Rogers, and an additional unknown subject. WILLIAMS then directed a "migo" to CAMPBELL for a payment of $1000, i.e., a "G". Later, electronic surveillance captured CAMPBELL hand US currency to an unknown Hispanic male.

17. On August 9, 2024, at approximately 11:04 p.m., WILLIAMS, using TARGET TELEPHONE 2, made an outgoing call to Jerald CAMPBELL, using (414) 745-1857. WILLIAMS asked, "Yeah did you do that thing?" CAMPBELL responded, "Yes it's 97 units left before I gave Malik 15, cuz it wasn't that many flavors, so I gave him 2 of some... plenty.. I gave him tops... I'm finna tell you what gave, what I put over there... and what's there. But I put 15 over there for Malik, it's 90, so 50, 80, whatever left..." WILLIAMS said, "Man gimme 5 for migo..." CAMPBELL asked, "You need 5 for migo?" WILLIAMS responded, "Yeah." CAMPBELL stated: "Aight.... uhhh." WILLIAMS stated: "Send me the list right now." CAMPBELL responded, "Aight, I'm finna send it to you. I'm finna send em over just put it." Based upon their training, experience, and the

9

investigation to date, case agents believe that WILLIAMS was asking CAMPBELL about the remaining controlled substances inventory, and CAMPBELL stated there were 97 "units" left and that he gave NICHOLS 15 units. WILLIAMS stated he needed "5" for an unknown individual, aka, "migo" and requested the "list."

18. On August 15, 2024, at approximately 7:13 p.m., WILLIAMS, using TARGET TELEPHONE 2, received an incoming call from Jerald CAMPBELL, using (414) 745-1857. WILLIAMS asked, "Hello?" CAMPBELL said, "Hello?" WILLIAMS said, "Yo." CAMPBELL asked, "What the hell you talkin' 'bout? [UI]" WILLIAMS said, "Dirty Harry." CAMPBELL replied, "Oh [UI]." WILLIAMS said, "Yeah." CAMPBELL said, "Oh I thought Cam got it." WILLIAMS stated, "I gave pops a nine. Nigga, what's it called, no clip. [UI] bullet, there's only one shot in there. [UI]" CAMPBELL replied, "Oh I thought you had a clip at the house." WILLIAMS said, "Nope, I ain't got one." CAMPBELL mentioned, "Got a clip at my crib. Duh. It ain't the standard one. [UI] Uhm, you [UI]." CAMPBELL asked, "The hell pops gettin' into that he need a gun anyway?" WILLIAMS said, "Shit, pops, he some cowboy, he be hearin' shit." CAMPBELL stated, "[UI] I'm finna sell Cam--lemme call Cam and see where he at." WILLIAMS replied, "Cam--he got some money, he needa buy one gun. Three fifty-four hundred, it's all typa shit for that." CAMPBELL said, "He ain't got no money." WILLIAMS stated, "He needa stop buyin' the [UI] and sell them dogs. He betta sell them--[UI] some dogs had some Frenchies and bred it to a fluffy Husky. You know somebody wanna buy these dogs? Let me get a muhfuckin' dog. [UI]" The conversation between CAMPBELL and WILLIAMS switched to an unknown female that told "Tay" not to pay WILLIAMS. According to

10

WILLIAMS, "Tay said, "big balla gettin' paid fifteen hundred dollas just to make a phone call." A bitch'll call you and you'll spend fifteen hundred dollas. For what? You ain't doin' shit. Whatchu need fifteen hundred dollas fo? CAMPBELL stated, "Bitch ass no fifteen hundred dollas. You extorting motherfuckas, I'd been treat her bitch ass. Oh my."

19.    Based upon their training, experience, and the investigation to date, case agents believe that WILLIAMS was talking to CAMPBELL about a firearm. WILLIAMS stated that he gave "pops" a 9mm firearm, i.e., a "nine," stating there was no magazine, "clip" and only a single round in the chamber, i.e., "only one shot in there." CAMPBELL stated he had a magazine, "clip" at his residence, "crib." WILLIAMS stated that "Cam" had money and needed to buy a gun. CAMPBELL told WILLIAMS that he took the smaller amounts of marijuana, "smalls" to sell, "dump" and that he is leaving the list by the scale which investigators believe to be a digital scale utilized to weigh up specific amounts of controlled substances.

20.    Case agents believe that monitoring the location information for the Target Cell Phone will enable case agents to conduct targeted physical surveillance and identify the locations where CAMPBELL co-conspirators, including sources of supply, and their locations, currently known and unknown to law enforcement officers, as well as the location of where the fruits of their illegal activities are being stored and/or distributed.

21.    Case agents believe that monitoring the location information for the Target Cell Phone will enable case agents to conduct targeted physical surveillance of CAMPBELL and identify locations where CAMPBELL resides as well as additional stash/distribution locations used by CAMPBELL and other members of the DTO.

22.      In my training and experience, I have learned that T-Mobile is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

## Cell-Site Data

23.      Based on my training and experience, I know that T-Mobile can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Providers typically collect and retain cell-site data pertaining to cellular devices to which they

12

provide service in their normal course of business in order to use this information for various business-related purposes.

### E-911 Phase II / GPS Location Data

24.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

### AUTHORIZATION REQUEST

25.     Based on the foregoing, I request that the Court issue the proposed warrants, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

13

26.     I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

27.     I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.   The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

28.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 120 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent

14

that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

29.     Because the warrant will be served on the Service Providers, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

15

# ATTACHMENT A

## Property to Be Searched

1.      Records and information associated with the cellular device assigned call number 414-745-1857 ("Target Cell Phone") that is in the custody or control of T-Mobile (referred to herein and in Attachment B as the "Provider"), a wireless telephone service provider headquartered at 18410 West Bryn Mawr Avenue, Suite 700, Chicago, Illinois, 60631.

2.      The Target Cell Phone.

# ATTACHMENT B

## Particular Things to be Seized

## I.      Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

   a. The following subscriber and historical information about the customers or subscribers associated with Target Cell Phone for the time period **July 23, 2024 to the date of this warrant**:

   i.   Names (including subscriber names, user names, and screen names);

   ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

17

vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(i) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received); and

(iii) timing advance data (PCMD, RTT, True Call, Timing Advance, LOCDBOR, or equivalent).

b.  Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i.  Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.  Source and destination telephone numbers;

iii.  Date, time, and duration of communication; and

iv.  All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phones will connect at the beginning and end of each communication.

c.  Information about the location of Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, per call measurement data (PCMD), Timing

18

Advance, True Call, RTT, LOCDBOR, or similar and real time cell site information for 30 days and other precise location information.

    i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phones on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

    ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitute evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846.

19